IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | Crim. No. 1:21-CR-00342 |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| JAQUAN MARQUI BRABHAM | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is the motion to suppress evidence and motion to dismiss the indictment filed by Defendant Jaquan Marqui Brabham ("Brabham"). (Docs. 46, 52.) Brabham argues that the evidence seized during a traffic stop should be suppressed because the state trooper unconstitutionally prolonged the stop in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015). (Doc. 46.) Brabham further argues the indictment should be dismissed because it violates the Fifth Amendment right to due process, and Article 1 §§ 8–10 of the United States constitution. (Docs. 52, 75.) The government responds that the trooper's warrantless search of Brabham's car was supported by probable cause, and therefore, constitutionally sound. (Docs. 67, 89.) For the reasons that follow, the motions will be denied.

### PROCEDURAL HISTORY

On November 3, 2021, Brabham was charged by indictment with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and one count of possession of a firearm with an altered or obliterated serial number in

1

violation of 18 U.S.C. § 922(k).  (Doc. 1.)  The indictment alleges that on or about August 8, 2020, Brabham knowingly possessed a Sig Sauer P229 Pistol knowing he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, the firearm was in and affecting interstate commerce, and the manufacturer's serial number on the firearm had been removed, altered, or obliterated.  (*Id.* at 1, 2.)

On December 30, 2022, Brabham filed the instant motion to suppress evidence and brief in support, a motion to suppress statements and brief in support,[1] a motion to dismiss count 2 and a brief in support,[2] and the instant motion to dismiss the indictment as unconstitutional in violation of the Fifth Amendment.  (Docs. 46, 48, 50, 52.)  On January 6, 2023, the court ordered a hearing on the motions to suppress.  (Doc. 54.)  The Government filed its brief in opposition to the motion to dismiss indictment on January 30, 2023.  (Doc. 67.)  Brabham filed a reply brief on February 13, 2023.  (Doc. 71.)

The court held a hearing on the motion to suppress evidence on March 15, 2023.  The Government filed its brief in opposition on May 18, 2023.  (Doc. 89.)  Brabham filed a reply brief on May 26, 2023.  (Doc. 92.)  The motion to suppress

---

[1] This motion was granted after the Government notified the court it did not intend to introduce, nor did it possess, any evidence of custodial statements.  (Doc. 64.)

[2] This motion remains pending and will be resolved in due course.

evidence and motion to dismiss indictment are fully briefed and ripe for disposition.

On June 27, 2023, Brabham filed another motion to dismiss the indictment based on *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1 (2022) and *Range v. Att'y General, United States of America,* 69 F.4th 96 (3d Cir. 2023). (Doc. 94.) This motion has been fully briefed and remains pending.

## FACTUAL FINDINGS

At the hearing held on March 15, 2023, Pennsylvania State Trooper David Owens ("Trooper Owens") testified. (Doc. 79.) At the time, Trooper Owens was employed by Troop J in York County as a patrol officer. (*Id.* at 4.) He testified that he had been involved in close to 300 traffic stops per year in the course of his employment as a state trooper. (*Id.* at 5.) Trooper Owens testified that during his initial training as a state trooper, he was shown marijuana, and smelled burnt and raw marijuana. (*Id.* at 7.) He also testified that he has worked mostly DUI related cases for the prior four years, which has given him experience in detecting the smell of marijuana. (*Id.*)

Trooper Owens then testified to the traffic stop involving Brabham on August 8, 2020.[3] Trooper Owens observed a vehicle weaving in and out of its lane

---

[3] At the hearing, Brabham entered into evidence the video recording of the traffic stop. The video recording depicts the events described by Trooper Owens in his testimony. Def. Exh. 200. In instances where there is an inconsistency between Trooper Owens' testimony and the video,

of travel and fluctuating in speed on Interstate 83 in York County at around 2:30 a.m.  (*Id.* at 5, 6.)  Trooper Owens initiated a traffic stop and approached the vehicle after it stopped.  (*Id.* at 6.)  Trooper Owens informed the sole occupant of the car, Brabham, that he was stopping him for the above traffic violations and asked for the occupant's license, registration, and insurance card.  (*Id.*)  Trooper Owens testified that he detected a faint, yet unmistakable, odor of marijuana at this point in time.  (*Id.* at 6, 8.)  Brabham handed Trooper Owens a Pennsylvania identification card, and after being asked, Brabham informed Trooper Owens that he had a valid license.  (*Id.* at 6.)  Trooper Owens returned to his cruiser to run a check on the identification card, and the check showed that Brabham had a suspended license.  (*Id.* at 7.)

Trooper Owens then returned to the vehicle, and, as Brabham rolled the window down, Trooper Owens detected a stronger odor of marijuana than on his initial approach.  (*Id.* at 8.)  Trooper Owens explained to Brabham that Brabham's license was suspended, and the two argued over the status of Brabham's license.  (Def. Exh. 200 at 08:53–10:18.)  At this point, Owens also asked Brabham about the smell of marijuana in the car, and Brabham stated he did not have any.  (*Id.* at 10:18–10:40.)  Trooper Owens then requested that Brabham exit the vehicle.

---

the court will rely on the video.  Although there are some inconsistencies, the court finds that such inconsistencies do not undermine Trooper Owens' credibility.

Brabham complied and Trooper Owens patted Brabham down.  After the pat-down, the two walked toward the police cruiser and began talking in front of the cruiser.  (*Id.* at 11:08–11:40.)  Trooper Owens informed Brabham that his car would need to be towed because Brabham's license was suspended.  (*Id.* at 11:40–11:45.)  Brabham explained that someone was on her way to pick up the car.  (*Id.* at 11:45–12:12.)  Trooper Owens then informed Brabham he was going to search the car because "it smelled like weed."  (*Id.* at 12:13–12:20.)  Brabham told Trooper Owens that he had a medical marijuana card but did not have it on him, though he did have his "registration" on his phone.  (*Id.* at 12:35–12:43.)  Trooper Owens requested to see the documentation on his phone.  (*Id.* at 12:45–13:23.)  Brabham then showed Trooper Owens something on his phone, which Trooper Owens testified appeared to be an application for a medical marijuana card.  (Doc. 79, pp. 8, 28.)

Trooper Owens then informed Brabham that he was going to search the vehicle and found a black bag that was in the front passenger seat.  (*Id.* at 8, 9.)  Inside the bag, there was a pack of THC gummies and loose-leaf marijuana.  (*Id.* at 9, Def. Exh. 144.)  There was a digital scale in the center console.  (Doc. 79, p. 9; Def. Exh. 144.)  At this time, Trooper Owens attempted to search the glove box, but it was locked.  (Doc. 79, p. 9.)  Trooper Owens returned to Brabham and asked for the key, and Brabham handed him a key that did not open the glovebox.  (*Id.*)

When Trooper Owens returned and relayed this to Brabham, Brabham was adamant that was the correct key, and when confronted with the information that it did not open the glove box, Brabham stated the key must have fallen off the keychain. (*Id.*)

Trooper Owens then resumed his search of the car. Standing at the open passenger side door, Trooper Owens could see down into the glove box through an air vent opening which was missing the plastic covering grate. (*Id.*) Through this opening, Trooper Owens saw a clear plastic bag containing what Trooper Owens, in his experience, identified as marijuana. (*Id.*) Trooper Owens then asked Brabham when he had last smoked marijuana, and Brabham related he last smoked around 3:00 p.m. the prior day. (*Id.*) Trooper Owens administered standardized field sobriety tests and determined that Brabham was not impaired. (*Id.*) After administering the standardized field sobriety tests, Trooper Owens placed Brabham under arrest for possessing a small amount of marijuana. (*Id.* at 10.) After placing Brabham under arrest, Trooper Owens again returned to the car to search the air vent opening into the glove box. (*Id.*) Trooper Owens observed "a good bit of plastic" that he pulled out of the air vent. (*Id.* at 44.) Once he pulled the plastic out, he found two more bags of THC gummies, a metal grinder, and a firearm. (*Id.* at 10.)

Trooper Owens testified that he believed he was acting in accordance with Pennsylvania state law because it was his understanding of Pennsylvania law in August 2020 that he could perform a warrantless search of a vehicle if he possessed probable cause to believe there was evidence of a crime or contraband in the vehicle. (*Id.* at 11.)

On cross-examination, Trooper Owens was confronted with the transcripts of a suppression hearing held on January 8, 2021, before Judge Craig T. Trebilcock of the York County Court of Common Pleas. (*Id.* at 12.)[4] At this hearing, regarding the same traffic stop as described above, Trooper Owens testified that he did not smell marijuana upon his initial approach of the vehicle. (Doc. 79, p. 14.) Trooper Owens testified that his memory was not fresher regarding these events in March 2023 than it was in January 2021. (*Id.*) When asked which memory was correct, Trooper Owens stated that he believed the testimony he gave at the March 2023 federal hearing was correct and that he smelled a faint odor of marijuana on his first approach of the vehicle. (*Id.* at 15.)

Trooper Owens was also shown Defense Exhibit 147. (*Id.* at 28, 29.)[5] Trooper Owens testified that he did not recall seeing exactly this document, and that Brabham did not have a medical marijuana card in his possession. (Doc. 79, p.

---

[4] The transcript was not admitted into evidence.

[5] This exhibit was not admitted into evidence.

29.) Trooper Owens also testified that he cannot differentiate between the smell of medical and nonmedical marijuana and testified that he smelled "regular raw, green marijuana," which is sold in dispensaries. (*Id.* at 32, 33.) Trooper Owens testified that, in order to determine whether marijuana is legally possessed under Pennsylvania's Medical Marijuana Act ("MMA"), one must see the packaging. (*Id.* at 36.)

Trooper Owens testified that, after he pulled the clear plastic baggie of marijuana from the air vent, he did not feel he needed to get a warrant because he "had reason to believe that there was other stuff in that glovebox since there was already one bag of weed in that glovebox." (*Id.* at 45, 46.) He did not have a suspicion of a gun being present at this point. (*Id.*)

Ms. Tisha Barilla also testified at the hearing but provided no testimony relevant to the instant motions.

## JURISDICTION

This court has jurisdiction under 18 U.S.C. § 3231, which gives district courts original jurisdiction over cases in which offenses against the laws of the United States are alleged.

**DISCUSSION**

**A. Motion to Suppress Evidence**

In his motion to suppress evidence, Brabham argues that the traffic stop was impermissibly extended under *Rodgriuez* because Trooper Owens did not possess a reasonable suspicion of criminal activity when he directed Brabham to exit the car. (Doc. 47, p. 8.)  Brabham argues that Trooper Owens did not have reasonable suspicion because Trooper Owens "knew only that traffic violations had occurred, he smelled raw marijuana, and that Mr. Brabham was allowed to possess marijuana by the state of Pennsylvania." (*Id.* at 9.)  The Government responds that, federal law "unequivocally authorizes a warrantless search based upon [the smell of marijuana.]"  (Doc. 89, p. 5) (citing *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)).  Brabham replies by pointing out the inconsistencies of Trooper Owens testimony between the state suppression hearing and the federal suppression hearing, and arguing that the Government presented no evidence that Mr. Brabham was not issued a medical marijuana card or that he possessed marijuana in a manner that violated the MMA.  (Doc. 92, p. 2.)

The United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.  With limited exceptions, the Fourth Amendment's restriction against "unreasonable searches and seizures" requires

9

law enforcement to obtain a warrant before searching persons or property. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). Whether a search is reasonable will depend on its nature and the surrounding circumstances. *See United States v. Whitted*, 541 F.3d 480, 484 (3d Cir. 2008). Generally, a warrantless search is presumptively unreasonable, and suppression of all evidence obtained from an unreasonable search is warranted. *Id*. (citing *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973)). The reasonableness of a search is fact-specific and depends on the circumstances surrounding the officers' conduct. *See Ornelas*, 517 U.S. at 695–98. The specific factual circumstances must then be evaluated by reference to guiding legal principles and precedent. *See Illinois v. Gates*, 462 U.S. 213, 231–32 (1983).

In the traffic-stop context, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). Thus, the "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'–to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citations omitted). Thus, a traffic stop may "last no longer than is necessary to effectuate th[at] purpose[,]" and the "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are–or reasonably should have been– completed." *Id.* Typical tasks for a traffic stop include "determining whether to

issue a traffic ticket" and "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355.

Accordingly, in applying *Rodriguez*, the Third Circuit has held that "[a]n unreasonable extension occurs when an officer, without reasonable suspicion, diverts from a stop's traffic-based purpose to investigate other crimes." *United States v. Green*, 897 F.3d 173, 179 (3d Cir. 2018.) The proper inquiry requires two steps: first, the court must determine "if and when the stop was measurably extended,"[6] and second, the court must then "assess whether the facts available at that time were sufficient to establish reasonable suspicion." *United States v. Hurtt*, 31 F. 4th 152, 159 (3d Cir. 2022) (quoting *Green*, 897 F.3d at 179) (alterations omitted)).

At the first step, Brabham asserts that the "*Rodriguez* moment" occurred when Trooper Owens directed him to get out of his vehicle. The court is not persuaded by this argument. In fact, the court concludes that ordering Brabham out of the vehicle was directly connected to the mission of the traffic stop because Trooper Owens was still performing the duties of the traffic stop. Trooper Owens ran Brabham's license, learned it was suspended, and ordered Brabham out of the car because Brabham was not able to drive the vehicle due having a suspended

---

[6] This is commonly referred to as the "*Rodriguez* moment."

license.  Trooper Owens confirmed the same to Brabham when he told him that they were going to wait for a tow truck or for his girlfriend to arrive.  Thus, Trooper Owens was still responding to the traffic and safety concerns when he ordered Brabham out of the car.  Trooper Owens' search of the vehicle occurred during the interval while they were waiting for either a tow truck or Brabham's girlfriend to arrive.  As a result, the traffic stop was never unreasonably extended beyond the mission of the traffic stop.

Regarding the second step in the *Rodriguez* analysis, Brabham argues that Trooper Owens did not have reasonable suspicion to warrant a search of the vehicle because no suspicion can be drawn from his denying consent to search, and no reasonable suspicion can be drawn from carrying raw marijuana because "the vast majority of individuals who have certifications to use medical marijuana likely carry raw marijuana in their car as allowed by law."  (Doc. 47, pp. 8, 9.)  Overall, Brabham argues that Trooper Owens had no reasonable suspicion because he only knew of traffic violations, smelled raw marijuana, and knew Brabham was allowed to possess marijuana.  (*Id.* at 9.)

Trooper Owens testified that the smell of marijuana was coming from inside the car and that it increased in strength after Brabham rolled the window down on his second approach to the vehicle.  While there was an inconsistency between Trooper Owens' state court suppression hearing testimony and the federal court

suppression hearing testimony regarding when he first smelled marijuana, this inconsistency does not undermine the overall credibility of Trooper Owens' testimony. And, even if he did not smell marijuana on his initial approach, he smelled it when he returned Brabham's identification card during his second approach. Trooper Owens had reasonable suspicion to continue the traffic stop because "[i]t is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). Thus, the smell of marijuana alone was sufficient to establish reasonable suspicion to extend the traffic stop and inquire about this smell.

    Brabham's argument that he was "allowed" to possess marijuana due to having a medical marijuana card is unavailing because there was no testimony that he had actually received a medical marijuana card at the time of the traffic stop or that he showed a valid card to Trooper Owens either before or after Trooper Owens ordered him out of the vehicle. Brabham was unable to produce a card at the time of the stop, and the documentation he showed to Trooper Owens appeared to be an application. Thus, Trooper Owens did not have confirmation that Brabham could legally possess marijuana. Moreover, there has been no evidence presented that Brabham possessed marijuana in a manner that complied with Pennsylvania's Medical Marijuana Act, which specifically describes the lawful use

13

of medical marijuana in Pennsylvania. 35 PA. STAT. AND CONS. STAT. § 10231.303 (West 2021). Finally, Brabham's reliance upon Pennsylvania law regarding the legality of marijuana possession and whether the smell of marijuana alone is sufficient to support reasonable suspicion is unavailing, as the law of the Third Circuit is clear that the smell of marijuana alone can establish probable cause.[7] *Ramos*, 443 F.3d at 304. Accordingly, Trooper Owens had reasonable suspicion to extend the traffic stop and conduct a vehicle search. The motion to suppress is denied.

### B. Motion to Dismiss Indictment

In his brief in support of the motion to dismiss the indictment, Brabham argues that 21 U.S.C. § 844 permits possession of a controlled substance if prescribed by a doctor and argues that "[t]he Pennsylvania Protection for patients and Caregivers which grants immunity to Mr. Brabham should be given full effect." (Doc. 53, pp. 6, 7) (citing 35 PA. STAT. AND CONS. STAT. § 10231.2103 (West 2021)). Next, he argues that he was deprived of his right to substantive due process under the Fifth and Fourteenth Amendments because he was deprived of

---

[7] Moreover, the court notes that the first Pennsylvania state court opinion holding that the smell of marijuana alone cannot support a finding of reasonable suspicion was published after the instant traffic stop took place. *See Commonwealth v. Barr*, 240 A.3d 1263 (Pa. Super. 2020) (published on September 25, 2020) (vacated and remanded by *Commonwealth v. Barr*, 266 A.3d 25, 44 (Pa. 2021)) (holding that "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle, but, rather, may be considered as a factor in examining the totality of the circumstances.")

his liberty without an adequate governmental justification. (*Id.* at 8.) Brabham argues that the government lacks an adequate justification for this deprivation because it has "given up trying to enforce a 'comprehensive regime' to completely prohibit marijuana for any purpose." (*Id.*) (citing *Standing Akimbo, LLC, et al. v. United States*, 141 S. Ct. 2236 (2021)). Brabham also argues that he entered into a lawful contract with the Commonwealth of Pennsylvania by receiving a medical marijuana card, he acted in reliance on that contract by possessing marijuana, and "[t]he lack of good faith on the part of the Trooper combined with the United States' 2022 piecemeal approach to marijuana legislation shows that the government no longer has a clear justification for its violation of due process as exemplified by the arrest of Mr. Brabham." (*Id.* at 8, 9.) Finally, in a notice of supplemental authority, Brabham points the court to *United States v. Jackson*, 388 F. Supp. 3d 505 (E.D. Pa. 2019), in which the court found that "a Rider to the Consolidated Appropriations Act (§ 357) prohibits the DOJ from using its funds to prosecute a violation of supervised release based on a releasee's state law-compliant use of medical marijuana." (Doc. 75, p. 1.)

The Government responds that the seizure of the firearm from Brabham's vehicle is a Fourth Amendment issue, not a Due Process or Contract Clause issue. (Doc. 67, p. 5.) The Government also points out that the Defendant does not cite to "any authority for the proposition that a validly returned federal indictment

15

should be dismissed because a person entered in[to] a contract with the state that is unrelated to the crimes charged." (*Id.*)

In his "consolidated" reply brief, Brabham argues that

Trooper Owens had no legitimate cause or reason to search the car based solely on the smell of marijuana. He knowingly, and in bad faith, violated Pennsylvania law. In the process of that violation, he rent asunder Mr. Brabham's MMA contract under Pennsylvania law by which he is allowed to use, transport and possess medical marijuana and deprived him of due process."

(Doc. 71, p. 4.) Brabham then requests that the evidence be suppressed for these reasons. (*Id.*) Brabham also argues that the evidence should be suppressed based on *Elkins v. United States*, 364 U.S. 206 (1960) and the York County Court of Common Pleas decision suppressing evidence in this case.[8]

Although this motion is styled as a motion to dismiss the indictment and Brabham requests the relief of dismissing the indictment, Brabham only raises arguments regarding the federal criminalization of marijuana possession. However, he is not charged in this case with any marijuana offense. (Doc. 1.) The arguments raised in support of the motion to dismiss are, in reality, further arguments in favor of suppressing the evidence found as a result of the traffic stop. For the same reasons as explained above, these arguments fail. The search began

---

[8] The court does not consider arguments raised for the first time in reply briefs and will not consider this argument here. Moreover, the York County Court of Common Pleas decision that was described as suppressing the evidence at issue in this case was not admitted into evidence in this case.

with the smell of marijuana, but it culminated in finding a firearm. Brabham is charged with two firearm offenses. Because the search was constitutional and no evidence from the search will be suppressed, the arguments regarding the criminalization of marijuana are simply not relevant to whether the court should dismiss the firearm charges in the indictment. Accordingly, the motion to dismiss the indictment will be denied.

## CONCLUSION

For the reasons explained above, the motion to suppress evidence and the motion to dismiss the indictment are denied. An order follows.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: March 1, 2024